IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00112-MR-WCM

| | |
|---|---|
| WILLIAM ZIEGLER )<br>and VICKI ZIEGLER, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>POLARIS INDUSTRIES, INC. )<br>and ERIC KIPP, )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant Polaris Industries, Inc.'s Motion for Summary Judgment [Doc. 95].

## I. PROCEDURAL BACKGROUND

On November 10, 2021, Plaintiffs William Ziegler and Vicki Ziegler ("Plaintiffs") filed this action in the U.S. District Court for the Western District of Michigan against Defendants Polaris Industries, Inc. ("Polaris"), and Eric Kipp ("Kipp"). [Doc. 1]. This action arises out of an incident that occurred on November 28, 2019, in Sylva, North Carolina. [Id.]. In their Complaint, William Ziegler alleged claims for strict liability design defect and negligence against Polaris, William Ziegler alleged a claim for negligence against Kipp,

and Vicki Ziegler alleged claims for loss of consortium against both Polaris and Kipp. [Id.].

On May 27, 2022, the claims against Kipp were dismissed with prejudice, and Kipp was terminated as a defendant. [Doc. 30]. On April 24, 2023, the U.S. District Court for the Western District of Michigan granted Defendant Polaris' Motion to Transfer Venue, and this matter was transferred to this Court the following day. [Docs. 67-68].

On September 8, 2023, Polaris moved for summary judgment on all claims brought against it. [Doc. 95]. On September 28, 2023, the Plaintiffs filed a Response in Opposition to the Defendant's Motion. [Doc. 101]. On October 10, 2023, the Defendant filed a Reply to the Plaintiffs' Response. [Doc. 105].

Having been fully briefed, this matter is now ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 814 (1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden shifts to the nonmoving party who must convince the Court that a triable issue exists. Id. In considering the facts on a motion for summary judgment, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

### III. FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to the Plaintiffs, the following is a recitation of the relevant facts.

3

On November 28, 2019, the Plaintiffs and their two daughters were visiting family in North Carolina for Thanksgiving. [Doc. 102-11: W. Ziegler Depo. at 30]. The Plaintiffs were staying with Kipp, who is Plaintiff Vicki Ziegler's brother, as well as Kipp's wife Nina and their two children. [Id. at 10, 32]. After the rest of their families had gone to bed, sometime after midnight, Kipp suggested that he and Plaintiff William Ziegler (hereinafter, simply "Plaintiff") go for a ride on Kipp's Polaris Ranger, a utility task vehicle ("UTV"), to see a nearby waterfall. [Id. at 33, 38].

The Plaintiff testified that he drank some moonshine earlier in the evening but was unsure of how much more alcohol he had to drink. [Id. at 33]. He remembered that he bought beer for himself and testified that he was probably drinking some beer but could not say for certain. [Id. at 34]. The Plaintiff also testified that he did not know how much Kipp had had to drink but was aware that Kipp had been drinking. [Id. at 34, 78-79]. The Plaintiff testified that he guessed "at some point [Kipp] had one or two [beers]." [Id. at 79].

The Plaintiff and Kipp were riding down Dark Ridge Road in Sylva, North Carolina, when they saw headlights and Kipp, who was driving, steered the vehicle off the right shoulder to avoid the oncoming vehicle, and the vehicle fell off the side of the road and into a creek. [Id. at 40, 45]. The

4

Plaintiff testified that he woke up after the crash aspirating in water with the roll bar of the vehicle smashed against his head. [Id. at 38, 77]. He testified that he remembered paramedics arriving at the scene but did not remember being removed from the creek or transported to the hospital. [Id. at 46].

Both Kipp and the Plaintiff were transported to and treated at Mission Hospital in Asheville, North Carolina, after the incident. [Id.]. Medical records indicate both Kipp and the Plaintiff's blood alcohol content ("BAC"). [Docs. 97-3 at 5, 97-4 at 12]. The medical records also state that "on arrival to [the] trauma bay" Kipp was "alcohol inebriated," and that "[Kipp] was drinking tonight, he can't give us any details of the accident." [Doc. 97-4 at 5, 7].

North Carolina State Trooper Tyson Crawford, who responded to the scene shortly after the incident, testified that at the time of his writing the accident report, he had no reason to believe that alcohol was involved in the crash. [Doc. 102-4: Crawford Depo. at 18]. He also testified that he did not charge Kipp with driving while impaired at the scene because Crawford did not get to speak with Kipp at that time and could not form an opinion as to whether Kipp was impaired. [Id. at 23].

As a result of the crash, the Plaintiff suffered significant injuries, including a traumatic brain injury, broken collarbone, scapula, ribs, and

5

sternum, and paralysis from the waist down. [Doc. 102-11: W. Ziegler Depo. At 6, 44, 50]. He was treated at Mission Hospital for nearly a month before transferring to a rehab hospital, AbilityLab, in Chicago, Illinois, on December 23, 2019. [Id. at 50]. The Plaintiff remained at AbilityLab until around February 25, 2020. [Id. at 52].

The Plaintiffs contend that design defects in the Polaris Ranger were the cause of William Ziegler's injuries, specifically, that the roll bar on the vehicle was configured so as to allow it to cave in on his head. [Id. at 77].

## IV. DISCUSSION

### A. Choice of Law

The parties do not dispute that North Carolina law applies to this matter. Because transfer of venue of this case from the Western District of Michigan was granted pursuant to 28 U.S.C. § 1404(a), the transferor court's choice-of-law rules apply. See A. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 64 (2013).

"In tort actions such as this, Michigan choice of law principles provide that Michigan law applies absent a rational reason—such as another state's interest—to apply other law." Daimler-Chrysler Services N.A., LLC v. Summit Nat., Inc., 289 Fed. App'x 916, 921 (6th Cir. 2008) (unpublished). The state with the greatest interest in the case is North Carolina, therefore,

this Court will apply North Carolina substantive law. "A federal court, sitting in North Carolina in a diversity case, must apply the law as announced by the highest court of that state or, if the law is unclear, as it appears the highest court of that state would rule." Brendle v. Gen. Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir. 1974).

## B. Negligence

The Defendant has asserted contributory negligence as a complete defense to the Plaintiffs' claims. It is well-settled that contributory negligence will bar a plaintiff's recovery in a product liability action to the same extent as in any other negligence case. Smith v. Fiber Controls Corp., 300 N.C. 669, 672, 268 S.E.2d 504, 506 (1980). The Defendant brings this summary judgment motion arguing that Mr. Ziegler was contributorily negligent as a matter of law. The Plaintiff, however, argues that contributory negligence is not a defense at all because he is pursuing his negligence claim under the "enhanced injury" theory.

### 1. Application of Contributory Negligence to Enhanced Damages Claim

"Under [an enhanced damages] theory, recovery may be allowed when defects in a vehicle enhance or increase plaintiff's injuries in an accident, although the defect did not cause the accident." Warren v. Colombo, 93 N.C. App. 92, 95, 377 S.E.2d 249, 251 (1989); see also

7

Murphey v. Georgia P. Corp., 331 N.C. 702, 707, 417 S.E.2d 460, 463–64 (1992) ("There will be an issue submitted [to the jury] as to whether the negligence of the defendant caused or enhanced the injury to plaintiff when the explosion occurred.").

Based on the forecast of evidence presented to the Court, a jury could reasonably find that contributory negligence on the part of Mr. Ziegler was a proximate cause of his injuries, including any such injuries that were enhanced by negligence in the Defendant's design. The Plaintiff provides no authority for the proposition that, as a matter of law, such contributory negligence would not be a defense. The authorities support submission of a contributory negligence defense in such circumstances. See Kennedy v. Polumbo, 209 N.C. App. 394, 406, 704 S.E.2d 916, 924 (2011) (affirming the trial court's summary judgment on the plaintiff's enhanced injury claim upon a finding of contributory negligence); Hinkamp v. Am. Motors Corp., 735 F. Supp. 176, 178 (E.D.N.C. 1989) ("[W]hile the court is willing to accept the recognition of the [enhanced injury] doctrine . . . in Warren v. Colombo, . . . it is not willing to infer from that decision any exception to the longstanding rule that a plaintiff's negligence is a complete bar to recovery if it contributes to his injuries."), aff'd, 900 F.2d 252 (4th Cir. 1990). Therefore, the fact that

the Plaintiff seeks to assert an enhanced injury claim does not preclude a jury from finding contributory negligence.

## 2. Contributory Negligence as a Matter of Law

In North Carolina, a passenger is considered contributorily negligent as a matter of law when (1) the driver of the vehicle was under the influence of an intoxicant; (2) the passenger knew or should have known that the driver was under the influence; and (3) the passenger voluntarily rode with the driver even though he knew or should have known that the driver was under the influence. Kennedy, 209 N.C. App. at 403, 704 S.E.2d at 924. "In determining whether the passenger knew or should have known that the driver was under the influence, [North Carolina] courts apply an 'ordinary prudent man' standard." Id. "The existence of contributory negligence is ordinarily a question for the jury; such an issue is rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached." Martishius v. Carolco Studios, Inc., 355 N.C. 465, 479, 562 S.E.2d 887, 896 (2002); see also Ayscue v. Weldon, 118 N.C. App. 636, 639-40, 456 S.E.2d 344, 347 (1995) (declining to disturb the jury's verdict for the plaintiff where the evidence at most established that the plaintiff knew the defendant was drinking; although defendant drank at least five beers in the plaintiff's

9

presence, a witness who saw them there testified that they had been drinking but did not "seem out of the way at all").

The second and third elements under Kennedy require that the Plaintiff knew or should have known that the driver was intoxicated. Here, the Defendant contends that given Kipp's BAC level, the Plaintiff must have been aware of Kipp's intoxication. The Defendant cites several cases in support of its argument that this forecast is sufficient for a finding of contributory negligence as a matter of law. However, those cases are factually distinct from the present case. The evidence relied upon by the court granting summary judgment in Kennedy, for instance, was much clearer: the parties were drinking together at a nightclub; employees at the club continued to serve the defendant alcoholic beverages after they became aware of her intoxication; the defendant was served numerous single shot glassfuls of liquor, the responding officer detected a strong odor of alcohol coming from the defendant; the defendant had trouble standing up and was stumbling; and the defendant had trouble following directions. Based on the evidence of what the plaintiff had observed, the court concluded that there was no dispute that the plaintiff at least should have known of the defendant's substantial intoxication. Kennedy, 209 N.C. App. at 404-05, 704 S.E.2d at 924-25. While the Defendant here argues there are factual similarities, here

there is no evidence of how many drinks either the Plaintiff or Kipp had consumed, what the circumstances of the consumption were (i.e., whether they were drinking together, whether the Plaintiff was present for or aware of Kipp's drinking) or any behaviors that would indicate to a reasonable observer the level of impairment. Indeed, those facts are entirely in dispute.

The Defendant also relies on Taylor v. Coats, where summary judgment was affirmed based on a forecast showing that the plaintiff and defendant were at a bar together for seven hours, the plaintiff knew the defendant was going to consume alcohol, the plaintiff "would have smelled alcohol on the defendant's breath when he gave her occasional kisses over the course of the evening," and the plaintiff presented no evidence to contradict the defendant's evidence. Taylor v. Coats, 180 N.C. App. 210, 214-15, 636 S.E.2d 581, 584 (2006). While scant, the evidence of intoxication in Taylor is still greater than that forecasted in the present matter.

While evidence of Kipp's BAC level may be sufficient to conclusively establish Kipp's intoxication, it is an insufficient forecast of evidence to conclusively establish the Plaintiff's awareness thereof. Indeed, the Plaintiffs have presented a forecast of evidence from which a reasonable jury could conclude that Mr. Ziegler was not aware of Kipp's intoxication. Mr. Ziegler testified that, while he knew Kipp was drinking the night of the accident, he

had no idea what or how much Kipp was drinking. [Doc. 102-11: W. Ziegler Depo. at 34-35]. Moreover, Trooper Crawford, who responded to the accident scene testified that he had no reason to believe that alcohol was involved in the crash, and that he could not form an opinion as to whether Kipp was impaired. [Doc. 102-4: Crawford Depo. at 18, 23]. Viewing the forecast of evidence in the light most favorable to the Plaintiff, a reasonable jury could conclude that the Plaintiff did not know or have reason to know that Kipp was impaired at the time of the accident.

As the Plaintiffs have presented a forecast of evidence from which a jury could conclude that Plaintiff William Ziegler did not know or have reason to know that Kipp was intoxicated, the Court cannot determine as a matter of law that the Plaintiff was contributorily negligent. Therefore, the Defendant's Motion for Summary Judgment will be denied.

### C. Loss of Consortium

Under North Carolina law, "a spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries." Nicholson v. Hugh Chatham Meml. Hosp., Inc., 300 N.C. 295, 304, 266 S.E.2d 818, 823 (1980).

12

Given that Plaintiff William Ziegler's negligence claim survives summary judgment, Plaintiff Vicki Ziegler's loss of consortium claim will also go forward.

### D. Strict Liability

North Carolina has adopted a statutory scheme for actions sounding in product liability. N.C. Gen. Stat. § 99B-1. Under this scheme, a strict liability action is not a cognizable claim. Bryant v. Adams, 116 N.C. App. 448, 473, 448 S.E.2d 832, 845 (1994). Therefore, the Plaintiff's strict liability claim against the Defendant will be dismissed.

## V. CONCLUSION

The Defendant's Motion for Summary Judgment fails with respect to the Plaintiffs' negligence and loss of consortium claims because the Defendant has failed to show that there is no genuine issue as to a material fact and this Court cannot find that the Plaintiff is contributorily negligent as a matter of law. The Plaintiff's strict liability claim, however, is not cognizable under North Carolina law, and therefore the Defendant's Motion will be granted with respect to that claim.

## ORDER

**IT IS THEREFORE ORDERED** that the Defendant Polaris Industries, Inc.'s Motion for Summary Judgment [Doc. 95] is **GRANTED IN PART** and

**DENIED IN PART.** The Motion is **GRANTED** with respect to the Plaintiff's strict liability claim, and such claim is hereby **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** with respect to the Plaintiffs' negligence and loss of consortium claims.

This matter shall proceed to trial for disposition of the Plaintiffs' claims for negligence and loss of consortium.

**IT IS SO ORDERED.**

Signed: January 11, 2024

Martin Reidinger
Chief United States District Judge