IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00112-MR-WCM

| | |
|---|---|
| WILLIAM ZIEGLER and VICKI ZIEGLER, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) **O R D E R** ) |
| POLARIS INDUSTRIES, INC., | ) ) ) |
| Defendant. | ) ) |

**THIS MATTER** is before the Court on the Plaintiffs' "Motion to Voluntarily Dismiss Pursuant to North Carolina Rule of Civil Procedure 41(a)" [Doc. 167].

## I. BACKGROUND

This action arises from a crash of a utility task vehicle ("UTV") in which the Plaintiff William Ziegler was a passenger. Mr. Ziegler and his wife initiated this action in November 2021 by filing a complaint in the U.S. District Court for the Western District of Michigan against the manufacturer of the UTV, the Defendant Polaris Industries, Inc. ("Polaris").[1] [Doc. 1]. In April

---

[1] The Plaintiffs also named Eric Kipp, the driver of the UTV, as a defendant. [Id.]. Mr. Kipp was subsequently dismissed from this action. [Doc. 30].

2023, the action was transferred to this District. [Docs. 67-68]. Following transfer, this Court entered a Pretrial Order and Case Management Plan setting a discovery deadline of August 31, 2023; a dispositive motions deadline of October 11, 2023; and a trial date during the Court's March 11, 2024 trial term. [Doc. 80].

In October 2023, Polaris filed motions seeking to exclude certain testimony from a number of the Plaintiffs' experts. [Docs. 109, 113, 116, 121, 124]. In particular, Polaris moved to exclude the testimony of Dr. Robert Burnham, the Plaintiffs' vehicle engineering expert, who proffered opinions regarding the direction and amount of force that was applied to the UTV's rollover protective structure (ROPS) during the crash. [Doc. 124]. To form his opinions, Dr. Burnham (or the Plaintiffs) contracted with a third-party vendor, Adapt Technologies ("Adapt"), to conduct computer simulations using different load cases in order to determine the load case that would result in deformation to a simulated ROPS "most like" that observed in the photos of the UTV's ROPS after the crash. [Doc. 102-6 at 11; Docs. 126-4; 152 at 2].

In an Order entered on February 7, 2024, the Court granted Polaris' motion and excluded Dr. Burnham's testimony. In so doing, the Court reasoned as follows:

Here, Dr. Burnham is seeking to be the "mouthpiece" of Adapt. Indeed, he contracted with Adapt to determine exactly the same information that Plaintiffs hired him to determine—the direction and amount of force the UTV's ROPS experienced during the crash. He then, apparently, adopted Adapt's opinion as his own without any further analysis. Indeed, Dr. Burnham's report does not so much as state that he reviewed all the data that Adapt generated during its simulations. Thus, Dr. Burnham's opinions will be excluded because Plaintiffs have not demonstrated that they meet the reliability threshold of Rule 702.

Additionally, . . . Adapt "deleted the data of the load cases that had been rejected" before it was provided to Polaris. [Doc. 133-1 at 5]. If Dr. Burnham reviewed this data, and it forms the basis of his expert opinions in this matter, it constitutes facts or data under Rule 26 which Dr. Burnham was required to disclose to Polaris.

Plaintiffs do not argue that this failure is harmless error. [See Doc. 139]. However, to the extent that this issue is before the Court, Polaris has established that it has been prejudiced by Dr. Burnham's noncompliance with Rule 26 because each of his opinions depend on Adapt's data. Indeed, his report states that opinions one and two are based upon the data Adapt generated, and opinion three—that the alternative design tested by Adapt is economically feasible—is irrelevant absent data demonstrating that this design would perform better in a crash. [See Doc. 102-6 at 11-17]. Additionally, because Dr. Burnham failed to provide Polaris with the data relating to the 22 load cases Adapt rejected, Polaris cannot properly question Dr. Burnham about how and why the one load case was selected, cannot examine the data relating to the other load cases to determine if they more accurately

3

> reflect the deformation sustained by the UTV's ROPS during the crash, and cannot analyze the total volume of data to discern any relevant trends. Accordingly, even if Dr. Burnham had reviewed all of Adapt's data and this data forms the basis of his opinions, his testimony would still be excluded.

[Doc. 166 at 35-37].

Three days after the Court's ruling, on February 10, 2024, the Plaintiffs filed the present motion seeking a voluntary dismissal of this action without prejudice. [Doc. 167]. Polaris filed a response in opposition on February 13, 2024 [Doc. 169], and the Plaintiffs filed a reply the following day [Doc. 170]. The Court held a telephone conference with the parties on February 15, 2024.

## II. DISCUSSION

Rule 41(a)(2) allows for an action to be "dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The purpose of Rule 41(a)(2) is "to allow voluntary dismissals unless the parties will be unfairly prejudiced." Howard v. Inova Health Care Servs., 302 F. App'x 166, 178 (4th Cir. 2008) (citation omitted). In determining whether to allow a motion to dismiss without prejudice, the Court should consider such factors as "the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary

4

dismissal, as well as the present stage of litigation." Id. at 179 (citing Miller v. Terramite Corp., 114 F. App'x 536, 540 (4th Cir. 2004) (internal quotation marks omitted)).

The Court first considers the Defendant's effort and expense in preparing for trial and the present stage of the litigation. Id. Here, the parties are approximately one month away from trial, and therefore, Polaris' efforts and expense in preparing this case to date have been substantial. The parties have undergone both expert and fact discovery and dispositive motions practice, and are now on the eve of trial. The Court concludes that Polaris would likely face substantial prejudice if the Plaintiffs were allowed to dismiss its action without prejudice at this stage in the proceedings. Accordingly, these two factors weigh heavily against allowing a voluntary dismissal by the Plaintiffs.

Next, the Court considers whether there has been excessive delay and lack of diligence on the part of the Plaintiff. Howard, 302 F. App'x at 179. Here, the Plaintiffs' counsel knew or at least should have known that the failure to provide the data generated by Adapt was a serious concern as early as the time of Dr. Burnham's deposition in July 2023. At the very latest, counsel was aware that the missing data was an issue when Polaris filed its motion to exclude Dr. Burnham's testimony in October 2023. Nevertheless,

the Plaintiffs' counsel waited until mere weeks before trial to file their motion for voluntary dismissal. As such, this factor also weighs against allowing a voluntary dismissal by the Plaintiffs.

The Court next considers the Plaintiffs' proffered explanation as to why a voluntary dismissal is needed. Here, the Plaintiffs assert that a voluntary dismissal is warranted primarily so that the Plaintiffs can have ADAPT recreate its work, disclose that data to Polaris, and allow Dr. Burnham to supplement his report to explain his reliance on such data. To lessen the prejudice to Polaris, the Plaintiffs agree to pay the costs of retaking Dr. Burnham's deposition. [Doc. 170].

Polaris indicates in its Response that it would be amenable to a dismissal without prejudice if the following conditions are met: the Plaintiffs agree to refile the action in this Court; any rulings made in these proceedings would be the law of the case in any refiled action; the refiled litigation would begin where this litigation terminated; and Polaris is reimbursed for any costs or expenses incurred in connection with the refiled litigation that it would not have incurred but for the filing of the motion for dismissal (such as, for example, taking another deposition of Dr. Burnham). [Doc. 169].

Upon consideration of the reasons proffered by the Plaintiffs' for the requested dismissal, and Polaris' apparent willingness to agree to such a

6

Case 1:23-cv-00112-MR-WCM   Document 171   Filed 02/16/24   Page 6 of 8

dismissal upon the satisfaction of certain conditions, the Court concludes that removal of this case from the March 2024 trial term is warranted under the circumstances. Allowing a dismissal without prejudice, however, would result in an excessive delay and an unnecessary duplication of effort and expense by the parties (the filing of a complaint and answer, the issuance of a new case management order, etc.). As the Plaintiffs' reasons for seeking a dismissal appear to rest primarily on the need to provide additional discovery regarding Dr. Burnham's opinions, the Court will grant a generous continuance of the trial date and set new deadlines related to Dr. Burnham's opinions in lieu of dismissing the action without prejudice. The Court finds that a continuance under the circumstances alleviates the potential prejudice to the parties and provides substantial justice.

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' "Motion to Voluntarily Dismiss Pursuant to North Carolina Rule of Civil Procedure 41(a)" [Doc. 167] is **DENIED**.

**IT IS FURTHER ORDERED** that:

(1) This case is **CONTINUED** from the March 11, 2024 trial term;

(2) On or before **April 15, 2024**, the Plaintiffs shall provide Polaris with such data from Adapt as can be provided;

(3) On or before **May 15, 2024**, the Plaintiffs shall disclose to Polaris a supplemental report from Dr. Burnham;

(4) Within sixty (60) days of receiving Dr. Burnham's report, Polaris may designate a rebuttal expert;

(5) Within thirty (30) days after the designation of Polaris' rebuttal expert (or the expiration of that 30-day period), the parties shall conduct depositions of Dr. Burnham and, if so designated, Polaris' rebuttal expert;

(6) On or before **September 16, 2024**, the parties shall file any new <u>Daubert</u> motions or motions in limine with respect to these experts;

(7) This matter shall be set for trial during the Court's **January 13, 2025** trial term; and

(8) All costs incurred by Polaris in connection with this continuance, including but not limited to the retaking of Dr. Burnham's deposition, shall be payable by the Plaintiffs upon approval by the Court of both the amount and reasonableness thereof.

**IT IS SO ORDERED.**

Signed: February 16, 2024

Martin Reidinger
Chief United States District Judge