IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00112-MR-WCM

| | |
|---|---|
| WILLIAM ZIEGLER and VICKI ZIEGLER, ) ) ) Plaintiffs, ) ) vs. ) ) POLARIS INDUSTRIES, INC. ) and ERIC KIPP, ) ) Defendants. ) ) | **O R D E R** |

**THIS MATTER** is before the Court on Polaris Industries, Inc.'s Motion to Strike Plaintiffs' Supplemental Expert Disclosure of Robert E. Burnham [Doc. 174].

## I. BACKGROUND

This action stems from a crash of a "UTV"[1] in which Plaintiff William Ziegler was a passenger. Mr. Ziegler and his wife Vicki Ziegler initiated this action in November 2021 by filing a complaint in the U.S. District Court for the Western District of Michigan against the manufacturer of the UTV,

---

[1] At various times in this litigation the parties have referred to this vehicle as an "All Terrain Vehicle" (ATV), a "Utility Task Vehicle" and a "Utility Terrain Vehicle". The Court will simply refer to it as a "UTV".

Defendant Polaris Industries, Inc. ("Polaris").[2] [Doc. 1]. In April 2023, the action was transferred to this District. [Docs. 67-68]. Following transfer, the Court entered a Pretrial Order and Case Management Plan setting a discovery deadline of August 31, 2023; a dispositive motions deadline of October 11, 2023; and a trial date during the Court's March 11, 2024, trial term. [Doc. 80].

In October 2023, Polaris filed motions seeking to exclude certain testimony from several of the Plaintiffs' experts. [Docs. 109, 113, 116, 121, 124]. In particular, Polaris moved to exclude the testimony of Robert E. Burnham, the Plaintiffs' finite element analysis and engineering expert, who specifically offered opinions regarding (1) the direction and amount of force that the UTV's rollover protective structure (ROPS) experienced during the crash, (2) the feasibility of implementing one particular alternative design of the UTV's ROPS, and (3) the costs of implementing this alternative. [See Docs. 102-6, 124]. To form his opinions, Burnham contracted with a third-party vendor, Adapt Technology, LLC ("Adapt"), to conduct computer simulations using different load cases,[3] with a goal of selecting the load case

---

[2] The Plaintiffs also named Eric Kipp, the driver of the UTV, as a defendant. [Doc. 1]. However, Mr. Kipp was subsequently dismissed from this action. [Doc. 30].
[3] A load case is a vector comprised of the magnitude and direction of a force. [Doc. 133-1 at 5].

2

that would cause deformation to a simulated ROPS "most like" that observed in the photos of the UTV after the crash. [Docs. 102-6 at 11; 126-4; 152 at 2]. Adapt also formulated the alternative ROPS design that Burnham proffered, and tested it via these simulations. [Doc. 102-6 at 18].

On February 7, 2024, the Court granted Polaris's motion and excluded Burnham's testimony. [See Doc. 166]. In so doing, the Court reasoned as follows:

> Here, [Mr.] Burnham is seeking to be the "mouthpiece" of Adapt. Indeed, he contracted with Adapt to determine exactly the same information that Plaintiffs hired him to determine—the direction and amount of force the UTV's ROPS experienced during the crash. He then, apparently, adopted Adapt's opinion as his own without any further analysis. Indeed, [Mr.] Burnham's report does not so much as state that he reviewed all the data that Adapt generated during its simulations. Thus, [Mr.] Burnham's opinions will be excluded because Plaintiffs have not demonstrated that they meet the reliability threshold of Rule 702.
>
> Additionally, . . . Adapt "deleted the data of the load cases that had been rejected" before it was provided to Polaris. [Doc. 133-1 at 5]. If [Mr.] Burnham reviewed this data, and it forms the basis of his expert opinions in this matter, it constitutes facts or data under Rule 26 which [Mr.] Burnham was required to disclose to Polaris.
>
> Plaintiffs do not argue that this failure is harmless error. [See Doc. 139]. However, to the extent that this issue is before the Court, Polaris has established that it has been prejudiced by [Mr.] Burnham's

3

> noncompliance with Rule 26 because each of his opinions depend on Adapt's data. Indeed, his report states that opinions one and two are based upon the data Adapt generated, and opinion three—that the alternative design tested by Adapt is economically feasible—is irrelevant absent data demonstrating that this design would perform better in a crash. [See Doc. 102-6 at 11-17]. Additionally, because [Mr.] Burnham failed to provide Polaris with the data relating to the 22 load cases Adapt rejected, Polaris cannot properly question [Mr.] Burnham about how and why the one load case was selected, cannot examine the data relating to the other load cases to determine if they more accurately reflect the deformation sustained by the UTV's ROPS during the crash, and cannot analyze the total volume of data to discern any relevant trends. Accordingly, even if [Mr.] Burnham had reviewed all of Adapt's data and this data forms the basis of his opinions, his testimony would still be excluded.

[Id. at 35-37].

Three days after the Court's ruling, on February 10, 2024, the Plaintiffs moved to voluntarily dismiss this matter without prejudice. [Doc. 167]. The Plaintiffs specifically represented that a voluntary dismissal was warranted "so that [they] c[ould] have A[dapt] recreate its work, disclose that data to Polaris, and allow [Mr.] Burnham to supplement his report to explain his reliance on such data." [See Docs. 170; 171 at 6]. After holding a telephone conference with the parties on February 15, 2024, the Court denied the Plaintiffs' motion. [See Doc. 171]. However, it provided the Plaintiffs with a "generous" continuance of the trial date, until the January 13, 2025, trial term

4

Case 1:23-cv-00112-MR-WCM   Document 184   Filed 08/19/24   Page 4 of 11

in order to allow the Plaintiffs the opportunity to "provide additional discovery regarding [Mr.] Burnham's opinions" and to disclose "such data from Adapt as c[ould] be provided" to Polaris. [Id. at 6-8].

On May 15, 2024, the Plaintiffs disclosed to Polaris a new report, which was signed by both Burnham and by Chris P. Theisen, the Vice President of Adapt.[4] [See Doc. 176]. Thereafter, on May 24, 2024, Polaris filed the present motion to strike this supplemental report. [Doc. 174]. The Plaintiffs have responded in opposition, and Polaris has replied. [Docs. 177, 178]. Therefore, this matter is ripe for disposition.

## II. DISCUSSION

In previously excluding Burnham's testimony, the Court's reasoning was two-fold. First, it appeared that Burnham had largely adopted Adapt's opinions without analysis, which rendered his opinions excluded under Rules 702 and 703 of the Federal Rules of Evidence. Second, the Court reasoned that to the extent that Burnham actually had reviewed Adapt's data and formed his own opinions therefrom, such data had been deleted, which violated the basic disclosure requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

---

[4] This new report is dated May 15, 2023, which appears to be a typographical error. [See Doc. 177: Plaintiffs' Response to Motion to Strike at 3 n.1 (noting typo in report)].

5

During the February 15, 2024 telephone conference, the Plaintiffs' counsel argued that a voluntary dismissal was warranted in order to give Adapt the opportunity to retrieve and/or recreate the data underlying Burnham's opinions, thereby rehabilitating him as an expert. The Court granted the Plaintiffs' request, specifically directing counsel to "provide additional discovery regarding [Mr.] Burnham's opinions" and to disclose "such data from Adapt as c[ould] be provided" to Polaris. [Doc. 171 at 6-8].

The "supplemental" report that the Plaintiffs now provide is an entirely new report. It is lengthier, contains new opinions, and is co-signed by Burnham as well as Theisen, the vice president of Adapt. However, Theisen has never been disclosed as an expert. To the extent that the Plaintiffs are attempting to tender Theisen and this joint report as a new expert opinion, such disclosures come thirteen months past the deadline for doing so. Moreover, this new report does not differentiate in any way between the opinions formulated and expressed by Theisen from those of Burnham.[5] As such, to characterize this new report as merely a "supplemental" report of

---

[5] If anything, the report indicates that the new conclusions were reached "[t]hrough the extensive computer expertise of Adapt" [Doc. 176 at 14], thereby implying that these conclusions are in fact Theisen's opinions, not Burnham's.

Burnham appears to be somewhat of an exaggeration, if not an outright misrepresentation.

Setting aside the problem of Theisen's contributions to this new report, counsel now represents to the Court that the data relied upon by Burnham in drafting his original report could not be retrieved. Thus, the Plaintiffs' opportunity to rehabilitate Burnham as an expert rests entirely on Adapt's ability to reconstruct the data Burnham used in formulating his original opinions. Thus, in order to salvage Burnham as an expert, the Plaintiffs must be able to establish that (1) Burnham reviewed the reconstructed data; (2) Burnham's original opinions are supported by such reconstructed data; and (3) Burnham is able to explain his analysis in having reached such conclusions.

As to this first requirement, Burnham's new report states that "[a]ll cases," i.e., computer simulations, "from the prior analysis were replicated." [Doc. 176 at 11]. Specifically, the new report states that this was done by "Finite Element Analysis," which is described as "a numerical method used to simulate and analyze the behavior of physical systems under various conditions." [Id. at 12]. This time, however, rather than considering the 20 previously run simulations with 20 different "load vector combinations" as was done with the original report, only 17 simulations were considered. [Id.

7

at 13]. As such, the statement that "all cases" from the prior analysis were "replicated" is simply not accurate.

Burnham opined in his original report that the load vector that produced the distortion of the ROPS was a vector positioned "Clockwise from Horizontal 25 Degrees in the RH Side View" and "Counter-clockwise 14.15 Degrees in the Front View" ("25/14"). [See Doc. 102-6: Burnham Original Rpt. at 12-13].[6] Based on the "replicated data," however, this opinion changed to a load vector of 18 degrees from horizontal and 14 degrees from vertical ("18/14"), respectively. [See Doc. 176: Burnham Supp. Rpt. at 21]. This demonstrates that either (1) Burnham and Theisen employed a different methodology in determining the load vector—which is in itself beyond the scope of the supplementation that the Court permitted the Plaintiffs to do—or, (2) the method employed did *not* yield the same results using the same data, thereby calling into question the reliability of the proffered opinion. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-94 (1993) (noting that the factors in determining reliability of expert opinion include "whether a

---

[6] This load vector determination from the original report is described in the new report as being "positioned at 25 degree clockwise from **vertical** in the side view (X) and 14 degrees counter-clockwise from **horizontal** in the front view (Y)" [Doc. 176: Burnham Supp. Rpt. at 18], which appears to be completely opposite of what is stated in the original report.

8

Case 1:23-cv-00112-MR-WCM   Document 184   Filed 08/19/24   Page 8 of 11

theory or technique ... can be (and has been) tested," and the "known or potential rate of error").

The conclusions reached in Burnham's competing reports are completely different. To the extent that the Plaintiffs attempt to argue that the 18/14 conclusion is simply a more refined opinion reached by employing better methodology, this does not help in rehabilitating Burnham as an expert. The Plaintiffs were given the rare opportunity to rehabilitate an expert who was excluded after a successful Daubert challenge. The Court's instructions were clear: the Plaintiffs were to provide the data that supported Burnham's opinions in his original report. Instead of doing so, however, the Plaintiffs have provided an entirely new report that *rejects* the opinions and conclusions of Burnham's original report in favor of a "better" conclusion. Not only does this new report run completely contrary to the Court's instructions in its February 2024 Order, allowing the Plaintiffs to proceed with this entirely new opinion would essentially require reopening expert discovery and starting afresh in a three-year-old case. It would be entirely unfair to Polaris to now have to defend against this new theory at this late date.

The Plaintiffs not only provided new (and different) data regarding the load vector of impact; Burnham/Theisen's new report provides entirely new opinions regarding the subject vehicle's design deficiencies and what other

9

design measures that Polaris should have taken.  In short, the Plaintiffs have taken their failure to preserve crucial data as an opportunity to buttress their case with new and better expert opinions.  The Plaintiffs' actions in doing so manifests a serious disregarding for the Court's directives in its February 16, 2024 Order [Doc. 171], allowing the Plaintiffs the opportunity to patch the data hole in Burnham's original report.  The Court is extremely disappointed that Plaintiffs' counsel would disregard the parameters of the Court's Order, seeking to exploit this as opportunity to improve the Plaintiffs' case.

In conclusion, the new Burnham/Theisen report: constitutes, at least in part, the opinions of an undisclosed expert; fails to actually replicate the data the Plaintiffs were given the opportunity to present; demonstrates that the conclusions set forth in Burnham's original report were not reliable, as required by <u>Daubert</u>; and presents new and different opinions long after the deadline for expert disclosures had expired.  For all of these reasons, the Defendant's Motion to Strike this "supplemental" report will be granted.  As the Plaintiffs have been unable to rehabilitate the opinions proffered by Burnham in his original and timely disclosed report, the Court's prior Order excluding Burnham's testimony [Doc. 166 at 37] will remain undisturbed.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Strike Plaintiffs' Supplemental Expert Disclosure of Robert E. Burnham [Doc. 174] is hereby **GRANTED**, and the Plaintiffs' supplemental disclosure regarding Robert E. Burnham is hereby **STRICKEN**.

**IT IS FURTHER ORDERED** that a final pretrial conference shall be held in this matter on **December 17, 2024 at 9:00 a.m.**

**IT IS SO ORDERED.**

Signed: August 19, 2024

Martin Reidinger
Chief United States District Judge