# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:23-cv-00112-MR-WCM

| | |
|---|---|
| WILLIAM ZIEGLER and VICKI ZIEGLER,       ) ) ) | |
|            Plaintiffs,   ) ) | |
|       vs.            ) ) | **O R D E R** |
| POLARIS INDUSTRIES, INC.,   ) ) | |
|          Defendant.  ) _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Leave to File a Further Summary Judgment Motion [Doc. 186]; the Plaintiffs' Renewed Motion to Voluntarily Dismiss, or in the Alternative, Reconsider the Court's Rulings of February 16, 2024 and August 19, 2024 [Doc. 188]; and the Plaintiffs' Motion for Leave to File Motion for Partial Summary Judgment [Doc. 189].

## I.    BACKGROUND

This action arises from a crash of a utility task vehicle ("UTV") in which the Plaintiff William Ziegler was a passenger.  Mr. Ziegler and his wife initiated this action in November 2021 by filing a complaint in the U.S. District Court for the Western District of Michigan against the manufacturer of the

UTV, the Defendant Polaris Industries, Inc. ("Polaris").[1]  [Doc. 1].  In their

Complaint, the Plaintiffs assert claims against Polaris for (1) strict liability

design defect; (2) negligence; and (3) loss of consortium (with respect to

Vicki Ziegler).  [Id.].

In April 2023, the action was transferred to this District.  [Docs. 67-68].

Following transfer, this Court entered a Pretrial Order and Case

Management Plan setting a discovery deadline of August 31, 2023; a

dispositive motions deadline of October 11, 2023; and a trial date during the

Court's March 11, 2024 trial term.  [Doc. 80].  In July 2023, the Plaintiffs

moved to amend their Complaint to assert a claim for breach of an express

warranty. [Doc. 87].  The Court, however, denied the Plaintiffs' motion.  [Doc.

92].

In October 2023, Polaris filed a motion for summary judgment, arguing

that: (1) the Plaintiff William Ziegler was contributorily negligent as a matter

of law; (2) Mr. Ziegler's contributory negligence bars the Plaintiff Vicki

Ziegler's loss of consortium claim; and (3) the Plaintiffs' strict liability claim is

barred under North Carolina law.  [Doc. 95].  At the same time, Polaris filed

---

[1] The Plaintiffs also named Eric Kipp, the driver of the UTV, as a defendant.  [Id.].  Mr. Kipp was subsequently dismissed from this action.  [Doc. 30].

motions seeking to exclude certain testimony from a number of the Plaintiffs' experts. [Docs. 109, 113, 116, 121, 124].

On January 12, 2024, the Court granted in part and denied in part Polaris' Motion for Summary Judgment. [Doc. 159]. Specifically, the Court dismissed the strict liability claim and denied summary judgment with respect to the Plaintiffs' negligence and loss of consortium claims. [Id.]. On February 7, 2024, the Court granted in part and denied in part Polaris' Daubert motions, significantly limiting the Plaintiffs' accident reconstruction and neurosurgery experts and excluding altogether the Plaintiffs' standards expert, Dr. David Bosch, and their engineering expert, Robert Burnham. [Doc. 166].

In response to the Court's Daubert rulings, the Plaintiffs filed a motion seeking a voluntary dismissal of this action without prejudice [Doc. 167], which the Defendant opposed [Doc. 169]. The Court denied the Plaintiffs' motion to voluntarily dismiss, but *sua sponte* continued the trial of this matter from March 11, 2024 to January 13, 2025, in order to provide the Plaintiffs with a generous opportunity to correct certain issues with Mr. Burnham's opinions. Specifically, the Court directed the Plaintiffs' counsel to "provide additional discovery regarding [Mr.] Burnham's opinions" and to "disclose such data from Adapt as c[ould] be provided." [Doc. 184 at 6]. Instead of

addressing these issues as directed by the Court, however, the Plaintiffs provided "an entirely new report" that not only provided *different* data, but also *different opinions* by Mr. Burnham.[2] [Id.]. On August 19, 2024, the Court struck Mr. Burnham's new report and, in so doing, held that "the Court's prior Order excluding Burnham's testimony … will remain undisturbed." [Id. at 10]. As a result, Mr. Burnham's expert opinions remain excluded in their entirety. [See Doc. 166].

Polaris now seeks leave to file a further motion for summary judgment on the grounds that the Court's limitation and exclusion of the Plaintiffs' liability expert witnesses preclude the Plaintiffs from carrying their burden of proof in this case. [Doc. 186]. The Plaintiffs consent to Polaris' request to file a further dispositive motion, conditioned upon their ability to file their own motion for partial summary judgment on certain issues. [Doc. 190]. By way of a separate motion [Doc. 189], the Plaintiffs seek leave to file such a motion, which Polaris opposes [Doc. 191]. Finally, the Plaintiffs renew their motion to file a voluntary dismissal without prejudice. [Doc. 188]. In the alternative, they move for reconsideration of the Court's prior Orders denying

---

[2] The Court's January 12, 2024, Order was not an advisory opinion as to how Plaintiffs could cure the defects in Burnham's opinions. It was to allow the Plaintiffs the opportunity to produce the prior data that underlie those opinions. The Plaintiffs' disregard for the language of the Court's Order is noted.

4

their request to voluntarily dismiss and striking Mr. Burnham's supplemental report. [Id.].

## II.    STANDARD OF REVIEW

### A.    Extension of Scheduling Order Deadlines

The deadlines set forth in the Court's Pretrial Order and Case Management Plan "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Under Rule 16(b), good cause exists where the moving party has diligently made efforts to meet court imposed deadlines." Tawwaab v. Virginia Linen Serv., Inc., 729 F.Supp.2d 757, 768 (D. Md. 2010). The determination of whether a party has demonstrated good cause is a matter within the Court's wide discretion. See Cook v. Howard, 484 F. App'x 805, 815 (4th Cir. 2012).

### B.    Reconsideration of Prior Orders

Where a district court issues an interlocutory order "'that adjudicates fewer than all of the claims,' the court retains discretion to revise such order 'at any time before the entry of a judgment adjudicating all the claims.'" Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). Courts "treat[ ] interlocutory rulings as law of the case" and can therefore "revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial

5

produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" Id. (second alteration in original) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)).  The decision to grant or deny a motion to reconsider is committed to the discretion of the district court. Am. Canoe, 326 F.3d at 515.

## III.  DISCUSSION

### A.  Motions for Leave to File Further Dispositive Motions

Both parties seek leave, pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, to file further dispositive motions prior to the trial of this matter.[3]  Specifically, Polaris moves for leave to file another summary judgment motion on the grounds that the Court's limitation and exclusion of the Plaintiffs' liability expert witnesses precludes the Plaintiffs from carrying their burden of proof in this case.  [Doc. 186].  This issue, however, could have been raised at the time that Polaris filed its original summary judgment motion and Daubert motions.  Polaris has failed to show good cause why it should be allowed—nearly a year after the dispositive motions deadline

---

[3]The parties also move for leave to file further dispositive motions pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure.  That rule provides that the Court may grant summary judgment "on its own after identifying for the parties material facts that may not be genuinely in dispute" and after giving notice and reasonable time to respond. The Court, however, is not seeking to grant summary judgment *sua sponte* and therefore, Rule 56(f)(3) is inapplicable to the present motions.

6

passed and mere months before the trial of this matter—to engage in another round of motions and briefing on this issue. Allowing dispositive motions at this late date would necessarily require yet another continuation of the trial date, which has already been extended well beyond the normal schedule of civil cases in this Court. If, as Polaris contends, the Plaintiffs are unable to satisfy their burden of proof at trial, such deficiency can be addressed in a Rule 50 motion at the close of the Plaintiffs' proof.

The Court now turns to the Plaintiffs' request for leave to file a motion for partial summary judgment. The Plaintiffs specifically seek to move for summary judgment on two discrete issues: first, that as a matter of law, the Plaintiff William Ziegler could not be found contributorily negligent and second, that Polaris breached an alleged express warranty. [See Doc. 189-1]. As for the first issue, the Court already addressed contributory negligence in its summary judgment order, finding that "the Court cannot determine as a matter of law that the Plaintiff was contributorily negligent." [See Doc. 159 at 12]. This means that there is a genuine issue of fact as to Mr. Ziegler's contributory negligence. The presence of such issue precludes summary judgment for either party. As such, the Plaintiffs' motion is without merit. As for the second issue, the Plaintiffs have not pled an express warranty claim. While they previously sought to amend their Complaint to assert such a

7

cause of action [Doc. 87], that motion was denied by the Magistrate Judge [Doc. 92], and such order was not appealed. As such, the Plaintiffs have no grounds upon which to file a motion for partial summary judgment on this issue.

For all of these reasons, the parties' motions for leave to file further summary judgment motions are denied.

## B.    Motion for Reconsideration

In their second motion, the Plaintiffs renew their request to voluntarily dismiss this action without prejudice so that they can attempt to cure the expert issues previously identified by the Court. Alternatively, they seek reconsideration of the Court's Orders denying their request to voluntarily dismiss and striking Mr. Burnham's supplemental report. To that end, the Plaintiffs also seek leave to allow Mr. Burnham and ADAPT yet another opportunity to produce the required data and supplement Mr. Burnham's report accordingly.    [Doc. 189]. The Court will address each of these requests in turn.

In denying the Plaintiffs' first motion for voluntary dismissal, the Court found that dismissal without prejudice at that late stage of litigation would result in an excessive delay, an unnecessary duplication of effort and expense by the parties, as well as substantial prejudice to Polaris. [Doc. 171

8

at 5, 7]. These considerations have only increased in magnitude since the Court last considered these issues. In addition, by seeking to re-start this case from scratch, the Plaintiffs seek to treat this Court's Orders as advisory opinions, drawing the Plaintiffs a roadmap as to how to proceed. Aside from the jurisdictional questions regarding advisory opinions, the Court is not disposed to "put its thumb on the scales" for one party by drawing such a roadmap. The Court merely addresses and disposes of the motions and record put before it. Accordingly, for the reasons previously stated, the Plaintiffs' renewed motion for a voluntary dismissal is denied, as is their alternative motion for reconsideration of the Court's February 16, 2024 Order denying their first motion for a voluntary dismissal.

To the extent that the Plaintiffs seek reconsideration of the August 19, 2024 Order striking Mr. Burnham's report, the Plaintiffs provide no justification for that request other than their conclusory statement that "[Mr.] Burnham's supplemental report met Plaintiffs' counsel's understanding of the spirit and letter of the court's February 16, 2024 order." [Doc. 188 at 4]. This, however, is not a proper basis for reconsideration, and the Plaintiffs cite no authority in support of their contention.

Further, while the Plaintiffs claim that they complied with the spirit of the February 16th Order [see id. at 9], they did not in fact do so. As the Court

9

previously found, the Plaintiffs "disregard[ed] the parameters of the Court's Order" and "[sought] to exploit this as opportunity to improve the Plaintiffs' case by "provid[ing] an entirely new report" from Mr. Burnham (which was co-signed by another, previously undisclosed expert, Chris P. Theisen). [Doc. 184 at 6, 10]. As the Court previously stated, this supplemental report "run[s] completely contrary to the Court's instructions in its February 2024 Order," and "would essentially require reopening expert discovery and starting afresh in a three-year-old case." [Id. at 9]. It would be entirely unfair to Polaris to now have to defend against this new theory at this late date.

Claiming that they have a "greater understanding of what the court expected" regarding the supplementation of Mr. Burnham's report, the Plaintiffs alternatively request that the Court allow them to pay ADAPT an additional $23,250.00 to create twenty data sets from the original data and present those to Polaris. [Doc. 188 at 4, 10]. The Plaintiffs, however, fail to address why they should be permitted yet another opportunity to rehabilitate Mr. Burnham's report, much less how this additional mulligan would address the issues identified by the Court in its prior Orders.

The Plaintiffs also have offered no evidence to show that they will now be able to produce the destroyed data. Indeed, at the August 13th hearing on Polaris' Motion to Strike, the Plaintiffs' counsel stated: "The data was

10

gone.… [I]t could not just be pulled back out of one of the super computers that were running the data.…The crunching of the [original] simulations no longer existed."  [Doc. 185 at 4–5; see also Doc. 184 at 7 ("[Plaintiffs'] counsel now represents to the Court that the data relied upon by [Mr.] Burnham in drafting his original report could not be retrieved.")].  Indeed, it appears that ADAPT now proposes to conduct twenty *additional* simulation runs, separate and apart from the original 22 simulations and 17 "supplemental" simulations that ADAPT previously ran.[4]  [See Doc. 188, Ex. A].  The Court rejected the Plaintiffs' prior attempt to "provide[ ] new (and different) data regarding the load vector of impact."  [Doc. 184 at 9].  It would be futile for the Plaintiffs to do so again.

The Plaintiffs also ask the Court to allow depositions of both Mr. Burnham and ADAPT's vice president, Chris P. Theisen, so that the parties can identify which opinions in the (now stricken) supplemental report belong to Mr. Theisen versus Mr. Burnham and so that "a full record exists as to [Mr. Burnham's] opinion."  [Doc. 188 at 10].  Allowing such depositions, however, would be futile and would simply waste the resources of both the parties and the Court.  In the August 19th Order, the Court noted that "[Mr.] Theisen has

---

[4] The second set produced a different result.

never been disclosed as an expert" and "[t]o the extent that the Plaintiffs are attempting to tender [Mr.] Theisen and this joint report as a new expert opinion, such disclosures come thirteen months past the deadline for doing so. Moreover, this new report does not differentiate in any way between the opinions formulated and expressed by [Mr.] Theisen from those of [Mr.] Burnham." [Doc. 184 at 6]. The Plaintiffs have failed to explain how these depositions would cure these concerns. Further, as the supplemental report has now been excluded, any further depositions would be futile, and thus would be a waste of the parties' resources. Accordingly, the Plaintiffs' request is denied.

The Court is troubled by the fact that the parties appear to consider the prior Orders of this Court as mere suggestions. The dispositive motions deadline was nearly a year ago. The Court has held that there are genuine issues for trial. It is long past time for this matter to proceed to trial and to a conclusion. The parties' motions to reopen aspects of this case to drag things out even further are seriously misplaced.

## IV.    CONCLUSION

For the foregoing reasons, the parties' motions for leave to file further dispositive motions are denied. The Plaintiffs' renewed motion for a voluntary dismissal or, in the alternative, for reconsideration of the Court's

12

prior Orders is also denied.  This matter remains for trial during the January 13, 2025 trial term.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Leave to File a Further Summary Judgment Motion [Doc. 186] and the Plaintiffs' Motion for Leave to File Motion for Partial Summary Judgment [Doc. 189] are both **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' Renewed Motion to Voluntarily Dismiss, or in the Alternative, Reconsider the Court's Rulings of February 16, 2024 and August 19, 2024 [Doc. 188] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 4, 2024

Martin Reidinger
Chief United States District Judge

13